UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION, MONITORING, MAINTENANCE, REPAIR, AND REMOVAL OF A GLOBAL POSITIONING SYSTEM MOBILE TRACKING DEVICE ON A 2019 NISSAN SENTRA, MASSACHUSETTS REGISTRATION 3ATA36, VEHICLE IDENTIFICATION NUMBER 3N1AB7AP1KY309183 | No. 23-7026-JCB<br><br>**FILED UNDER SEAL** |

## AFFIDAVIT OF SPECIAL AGENT JOHN R. DALY

I, John R. Daly, Special Agent of the United States Drug Enforcement Administration, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent ("SA") with the United States Drug Enforcement Administration ("DEA") and have served in this capacity since May of 1998. From 1994 to 1998, I served as a law enforcement officer with the United States Capitol Police. Since 2013, I have been assigned to DEA's Tactical Diversion Squad in Portsmouth, New Hampshire and DEA's Manchester District Office in Bedford, New Hampshire.

2.      I have written and/or participated in the execution of numerous search warrants resulting in the seizure of large quantities of controlled substances and paraphernalia involved in the manufacture and distribution of controlled substances; United States currency; records of narcotics and monetary transactions; drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing, and distribution of controlled substances; as well as the collection, expenditure, accounting, transportation, and laundering of drug proceeds. I have participated in the debriefing of numerous defendants, informants, and witnesses who had personal

knowledge regarding large-scale narcotics trafficking organizations. I have participated in all aspects of drug investigations including conducting surveillance, executing searches pursuant to court-ordered search warrants, executing arrests, and participating in court-authorized Title III wiretaps of cellular phones. I have received extensive specialized training in the field of controlled substance identification, investigation, and enforcement.

3.      Based on my training and experience, I am familiar with narcotics traffickers' methods of operation, including methods used by them to distribute, store, and transport narcotics, and to collect, expend, account for, transport, and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use personal and rented cars and trucks, common carriers, mail and private delivery services, and a variety of other motor vehicles to: (a) meet with co-conspirators, customers, and suppliers; (b) transport, distribute, and purchase narcotics; (c) transport funds used to purchase narcotics; and (d) transport the proceeds of narcotics transactions.

4.      Based on my training and experience, narcotics trafficking typically involves the local, interstate, and international movement of illegal drugs to distributors and co-conspirators at multiple levels, and the movement of the proceeds of narcotics trafficking among multiple participants including suppliers, customers, distributors, and money launderers. Within the United States, illegal drugs and drug money are most often transported in motor vehicles. Consequently, the location of vehicles used by narcotics traffickers and those working with them can be instrumental in identifying and intercepting shipments of illegal drugs and drug proceeds.

5.      More broadly, based upon my training and experience, tracking drug traffickers in motor vehicles frequently leads to evidence of narcotics and money laundering offenses, including, but not limited to: (a) the identification of potential criminal associates, such as criminal co-conspirators, suppliers of illegal narcotics, and money launderers; (b) the identification of physical locations at which illegal drugs are offloaded, stored, and/or distributed, including residences,

businesses, commercial storage facilities, warehouses, and ports; and/or (c) the identification of locations where drug proceeds are stored, deposited, concealed, used in monetary and financial transactions and laundered, including private businesses, banks, wire-remitter businesses, and other financial institutions.

6.      Based on my training and experience, tracking narcotics traffickers in motor vehicles often corroborates and verifies other information and investigative leads derived from other investigative techniques including informants, wiretaps, and visual surveillance.

7.      I submit this affidavit in support of an application for an Order, pursuant to Rule 41(e)(2)(C) and Title 18, United States Code, Section 3117, authorizing agents of the DEA to surreptitiously install, monitor, repair, replace, and use a real-time Global Positioning System ("GPS") mobile tracking device for 45 days on the following motor vehicle located in the District of Massachusetts for the purpose of monitoring and recording data regarding the movement of this motor vehicle both inside and outside the District of Massachusetts:

A BLACK 2019 NISSAN SENTRA, MASSACHUSETTS REGISTRATION 3ATA36, VEHICLE IDENTIFICATION NUMBER ("VIN") 3N1AB7AP1KY309183 REGISTERED TO MELIZA SANTANA, 19 ALDEN PLACE, WEST NEWTON, MA (hereinafter, the "SUBJECT VEHICLE").

8.      I submit this affidavit in furtherance of an ongoing criminal investigation into Jeison Dume-Calderon ("DUME-CALDERON"), Michael Michaud ("MICHAUD"), and Matthew Stevenson ("STEVENSON"), and others yet unknown concerning violations of federal law including Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute a controlled substance and distribution of a controlled substance).

9.      As further described below, there is probable cause to believe that: (a) DUME-CALDERON, MICHAUD, and STEVENSON have committed, are committing, and will continue

to commit violations of one or both criminal statutes cited above; (b) DUME-CALDERON is using the SUBJECT VEHICLE to facilitate the commission of these offenses; and (c) the data obtained from the requested GPS device about the geographic location of the SUBJECT VEHICLE will constitute and/or will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of the individuals who are committing those and related crimes. There is also probable cause to believe that the SUBJECT VEHICLE is an instrumentality of the crimes described above in that it is being used in committing one or both of the aforementioned criminal statutes.

10.      I submit this affidavit for the limited purpose of establishing probable cause for the requested warrant.  Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation.  As a result of my personal participation in the investigation, review of reports submitted by other law enforcement personnel, and my consultations with other law enforcement officers, I am familiar with this investigation.

11.      The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, information received from other law enforcement officers, including their direct examination of relevant documents, reports of interviews with witnesses in this investigation and physical surveillance conducted in connection with the person and places mentioned in this affidavit.  I have not set forth every detail I or other law enforcement agents know about this investigation but have simply set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested warrant.

## THE CURRENT INVESTIGATION

**A.      Background of Investigation**

12.      This investigation began in or about November 2022 when an individual working with law enforcement as a confidential source ("CS-1") told members of the DEA and the

Portsmouth, New Hampshire Police Department ("Portsmouth PD") that STEVENSON was selling

ounce quantities of methamphetamine in the Rochester, NH area.[1] Furthermore, STEVENSON

informed CS-1 that if he/she wanted to purchase pound-quantities of narcotics, CS-1 would have to

deal with "Mike."

13.     Law enforcement agents later identified "Mike" as MICHAUD. MICHAUD is

believed to sell fentanyl, cocaine, crystal methamphetamine, and the hallucinogenic drug

Dimethyltryptamine ("DMT") from locations in New Hampshire, including from MICHAUD's

residence located at the Homewood Suites by Hilton, 21 Members Way, Dover, NH.

14.     Law enforcement agents later identified MICHAUD's supplier as DUME-

CALDERON. DUME-CALDERON uses the TARGET VEHICLE.

**B.     Probable Cause to Believe That Crimes Are Being Committed**

15.     In December 2022, DEA agents utilized CS-1 to make two controlled purchases of

methamphetamine from STEVENSON.[2]

---

[1] CS-1 has been cooperating with the Portsmouth PD and DEA for approximately two months for consideration in an uncharged criminal matter. CS-1's criminal history consists of multiple convictions for sales under the New Hampshire Controlled Drug Act, possession of a controlled drug, control of a premise where drugs are stored, willful concealment, driving while intoxicated, and theft by unauthorized taking. CS-1 does not have any pending charges.  CS-1 is a past known drug user. I believe the information CS-1 has provided to law enforcement is truthful and reliable as CS-1's information has been corroborated, to the extent possible, by audio and video recordings, surveillance, information obtained from public records, and other law enforcement resources.

[2] Prior to each controlled transaction, law enforcement officers equipped CS-1 with audio and/or video recording devices and searched CS-1 prior to and after the transactions for narcotics, unexplained currency, and weapons, with negative results.  Law enforcement officers also provided CS-1 with official authorized funds (OAF) to make the drug purchases.  After each drug purchase from STEVENSON, law enforcement officers surveilled CS-1 to a pre-arranged meeting location where CS-1 provided the drugs and the recording equipment to law enforcement officers, who debriefed CS-1 about what transpired during the drug deals. To the extent possible, agents have reviewed the audio and/or video recordings of these transactions, which corroborate CS-1's information.

a.      During the December 8, 2022, controlled purchase, STEVENSON told CS-1

that he did not have the negotiated two ounces of methamphetamine on him and sold CS-1

one and a half ounces of methamphetamine.  STEVENSON told CS-1 to meet him later in

the day to purchase the remaining half-ounce at a Dover, NH restaurant parking lot that is

connected to the Homewood Suites parking lot. After CS-1 arrived at the parking lot under

DEA surveillance, agents observed STEVENSON exit a side hotel door and meet with CS-1

in the parking lot to complete the sale.[3]

b.      The second drug sale by STEVENSON to CS-1 occurred on December 19,

2022, after CS-1 introduced a DEA Undercover Task Force Officer ("UC") to

STEVENSON. During this sale, the UC purchased approximately four ounces of crystal

methamphetamine from STEVENSON for $1,800. The transaction took place in a Shaw's

Supermarket parking lot in Dover, NH.  DEA agents submitted the substances to the DEA

laboratory for testing and the results are pending; however, agents tested the substances

using a TruNarc Narcotics Detection device, which resulted in positive results for

methamphetamine.

16.     During the investigation, a DEA source of information ("SOI") identified

MICHAUD as trafficking in large quantities of methamphetamine, heroin/fentanyl, cocaine, and

DMT in and around the New Hampshire seacoast area.[4]  From October to December 2022, the SOI

---

[3] A check of Homewood Suites reservation records lists MICHAUD as a long-term guest who is staying in room 128 from October 23, 2022, thru March 31, 2023. Room 128 is the closest hotel room to where surveillance agents observed STEVENSON exit the hotel during CS-1's purchase.

[4] The SOI has been cooperating with the Portsmouth PD and DEA for the past several weeks for consideration in a pending criminal matter. The SOI's criminal history consists of multiple convictions for violating conditions of release, fugitive from justice, possession of drug paraphernalia and cocaine, burglary, falsifying physical evidence, and operating under the influence. The SOI is a past known drug user. I believe the information SOI has provided to law enforcement

regularly purchased large quantities of narcotics from MICHAUD at various locations throughout the seacoast NH area.

17.     The SOI described MICHAUD's drug source as an older Dominican male. The SOI stated that MICHAUD regularly meets his drug source at local casinos, including the Brook Casino in Seabrook, NH, to pay his drug debt and pick up narcotics to distribute. According to the SOI, MICHAUD's source routinely supplies MICHAUD with one kilogram of fentanyl, two kilograms of crystal methamphetamine, and 14 to 16 ounces of cocaine.

18.     Further investigation identified MICHAUD's source as DUME-CALDERON:

a.     On January 10, 2023, agents saw MICHAUD and DUME-CALDERON exit the Brook Casino together and walked to their respective vehicles, which were parked next to each other. MICHAUD opened the driver's side rear door of his vehicle, a Nissan Xterra, and appeared to retrieve multiple stacks of folded U.S. currency. MICHAUD walked to the driver's door of DUME-CALDERON's vehicle, which was the SUBJECT VEHICLE. MICHAUD handed the currency to DUME-CALDERON through the driver's window of the SUBJECT VEHICLE.

b.     MICHAUD then entered the SUBJECT VEHICLE's front passenger seat. For approximately the next 25 minutes, MICHAUD and DUME-CALDERON conversed and were on their respective cellphones. MICHAUD exited the SUBJECT VEHICLE and appeared to be concealing something within his coat as he returned to his Xterra. The SUBJECT VEHICLE and MICHAUD's Xterra departed the parking lot in tandem.

---

is truthful and reliable as SOI's information has been corroborated to the extent possible by surveillance and information obtained by public records, and through other law enforcement resources.

**C.     Probable Cause to Believe that the SUBJECT VEHICLE's Location Will Lead to Evidence of Criminal Activity**

19.     Based on my training and experience, and on the events described herein, I believe that DUME-CALDERON utilizes the SUBJECT VEHICLE in furtherance of one or both of the criminal statutes identified above.

20.     Therefore, there is probable cause to believe that information about the SUBJECT VEHICLE's location and movement will lead to: (a) the identification of potential criminal associates, including DUME-CALDERON's supplier(s); (b) the identification of physical locations at which illegal drugs are offloaded, stored, and/or distributed; and/or (c) the identification of locations where drug proceeds are stored, deposited, concealed, and used in monetary and financial transactions and laundered.

## AUTHORIZATION REQUEST

21.     WHEREFORE, the United States requests that the Court issue a warrant authorizing members of the DEA or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the District of Massachusetts within 10 calendar days of the warrant's issuance; to repair, replace, maintain, and remove said tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; and to monitor the tracking device, for a period of 45 days following the warrant's issuance. To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, the United States further requests that the Court authorize the installation, replacement, maintenance, and removal of the tracking device during both daytime and nighttime hours.

22.     Because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation, the United States also requests that the warrant delay

notification of the execution of the warrant for a period not to exceed 30 days after the end of the

authorized period of tracking (including any extensions thereof), in accordance with 18 U.S.C. §

3103a(b) and Federal Rule of Criminal Procedure 41(f)(3).

## CONCLUSION

23.     WHEREFORE, I submit that there is probable cause to believe that (a) Jeison

DUME-CALDERON, Michael MICHAUD, and Matthew STEVENSON have committed, are

committing, and will continue to commit violations of one or both criminal statutes cited above; (b)

the SUBJECT VEHICLE is being used to facilitate the ongoing narcotics trafficking activities of a

criminal organization; and (c) the data obtained from the GPS device about the geographic location

of the SUBJECT VEHICLE will constitute and/or will lead to evidence, fruits, and instrumentalities

of the aforementioned crimes as well as to the identification of individuals who are engaged in the

commission of those and related crimes.

I declare that the foregoing is true and correct.

JOHN R. DALY
Special Agent
Drug Enforcement Administration


Sworn to by telephone in accordance with Federal Rule of
Criminal Procedure 4.1 on this 2d day of February 2023.

JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE